My name is Douglas Nelson on behalf of the petitioners. In this case credibility has already been established. The judge found that the testimony and the written materials were all credible. Therefore, the question comes down to whether there is a nexus between the harm or the threats in a political opinion. We have to prove that the harm or threats that my clients suffered was motivated at least in part by the credibility of the testimony. In part, by an actual or implied ground of eligibility. Now, we cannot present the testimony of the persecutors. We can't bring them from Colombia and have them explain their motives. And so this court has held that we look at the factual circumstances surrounding the threats to determine what the motive was. Indeed, in Novus Viennes it says in some cases the factual circumstances alone may provide sufficient reason to conclude that acts of persecution were committed on account of one of the five grounds. So what are the circumstances in this case? Well first, we have a violent leftist guerrilla political organization, the Jaime Bateman Cañon group. A splinter group from M-19 that sought to harm the petitioner. Now it's important to note that this group was so radical that when M-19 legitimized, they split off because they were unhappy with that. They exist for political motives. We're not talking about a street gang or a mafia organization. Their goals are political. Now let's look at the victim. My client, Roberto, and we'll talk about the husband mostly because he was the political figure in the family, has five brothers and sisters. And the family did stand to inherit some money. And the Jaime Bateman group wanted to go after that in part. But it's interesting to note that the Jaime Bateman group did not threaten any of the other brothers or sisters. They did not go after the father who had the money. They knew who they were. I mean, obviously the group had followed the family closely. They knew where they lived. They knew what car they drove. They knew that they had a new car. They knew that the family had left temporarily for a short time to visit other relatives. Mr. Nelson, I'm no expert on Colombian estate law, but would the fortune go to the eldest male child? Is that – there seemed to be some suggestion in the record that he was likely to inherit a substantial sum of money from his ill father. I don't know the law on that, but it doesn't mean – that statement does not mean that the rest of the family did not stand to inherit the money either. Well, it would if Colombian law said that the eldest male child gets all the money. But let me go to a more direct question. And that is, is this a mixed motive case? Is that what you're urging upon us? Because clearly there's an economic element of the extortion here. And I.J. noted that it was difficult to determine, assuming the evidence most favorably to your client and the fact that she testified credibly that, you know, these were attractive victims because of the fact that they, by Colombian standards, were relatively well-to-do. It is a mixed motive case. I think, though, the primary motive was politics, as proven by the fact that the rest of the family was not threatened. The victim in this case, Consuelo's husband, Roberto, worked for the liberal Colombian party, and they were duly elected to reign over that city. And for his work, he was awarded the petition of finance director for the rural development. Is that it? I'm sorry. I'm sorry. Go ahead. Finish your thought. Yes. And, well, in that position, they wanted, they approached him and they wanted him to achieve their political goals or purposes. That's specifically what they asked him to do. And they also threatened to take money from him. And they also threatened to kidnap his son. But it's interesting that they would go after the only political figure in the entire family. Now. His position, as I understand it, he was in charge of rural economic development? Correct. Which I assume has something to do with helping rural communities get jobs and money and that sort of thing. Yes. And development of the area. Infrastructure, too. But they did not have that position. The Jaime Bateman group was not elected to that position. And so they went after the person who was to achieve, as he put it, their political goals and purposes. But, again, back to my mixed motive question. Is that a political goal or are they targeting this guy because he's in a government position where if they threatened him, maybe he could, through his job, provide some economic benefit to the group in an area that the group wants to have benefited? And there's another way to look at it. Had he complied with their demands, then clearly there would be no issue here. But he refused to obey the Jaime Bateman group. Well, the only demand that we know of for sure was an actual extorted amount of money, right? Some, what was it, 800,000 Colombian pesos or whatever they are? Correct. And the other reference is to them wanting to achieve their political goals or purposes. But they didn't explain what those goals are. No. What they did say is we want money. What is it that they asked him to do? To achieve their political goals or purposes. What is that? I mean, we're in the middle of an election campaign and when they fundraise, that's what they ask for is to help. Even in the United States, the headlines are about the horse race instead of what the positions of the parties are. So, I mean, I sympathize or I understand that argument. But this is a violent leftist guerrilla group who wanted him to do their will. And he refused to do their will. And I think that is where the political... Well, you know, if they had asked him to intercept all of the instructions that he had received with respect to something or other so that they could go out and destroy what the government was trying to do, then that would be, and he refused to do it because he said, I believe in what the government is doing. And then they threatened him. That would be a little different. But that didn't happen here apparently. Because we don't have a specific act that he refused to do other than give money. If only we had a super clear motive in all of these cases, then we wouldn't have this controversy. I have a question about our standard of review here. The IJ was confronted with a question whether this woman was a crime victim or whether her husband was, or whether she was a sort of a collateral damage victim of political persecution by Shining Path against her husband. Now, that's a question that the IJ has to decide not as a question of law really, but as a question of fact. Now, what is the basis for us to hold that this was clearly erroneous to say she was a crime victim? If substantial evidence proves that a reasonable fact finder would find that there was a political motive here, then the judge was wrong. And we believe that the substantial evidence does show that a reasonable person or fact finder would find that there was a political motive here. I think some of the best evidence is the letter from the Deputy District Attorney. That's not the standard, is it? Well, substantial evidence. To overturn a finding? First of all, yes. Substantial evidence shows that there was a motive. No, compels. Compels. Compels the opposite result. Right. And what do we do when the evidence is an equipose, which it appears to be in this case? Could be extortion, could be political. We really don't know. And that is our disagreement with the judge. Well, that's the problem, isn't it? Because our test is whether substantial evidence supports what was found. And we believe the substantial evidence in this case, which includes the documentary evidence that this was a violent leftist political group, and the other evidence which shows that he failed to obey their pretenses. That's what his letters of support said. And more importantly, what the Deputy District Attorney wrote was that he was persecuted politically by the same subversive group. So, I mean, the investigator or the Deputy District Attorney found that there was a political motive there. And so that's the reason we believe the judge made the wrong call in this case, that there was clear substantial evidence of the motive. Okay. I think we have about 30 seconds left. Yeah, you can reserve. Thank you. Good morning. May it please the Court. My name is Jeff Leese, the de facto respondent. In this case, substantial evidence supports the immigration judge's determination that the Petitioner's failed to demonstrate that they were persecuted on account of their political opinion. If I can address some of the claims that have been raised, both in Petitioner's brief and by Petitioner's counsel.  His brothers and his sisters isn't really evidence that his persecution was on account of his political opinion. As was discussed a little bit, there's no evidence in the record as to the other family members' financial situation, whether they were in any way a public figure or whether they were going to actually substantially benefit from their father's death. All we have is information that he himself was going to inherit some money. In terms of the Deputy District Attorney's letter, that coupled with the testimony, they're all very vague in his references to, you know, help us with your job. The mere fact that they dropped, you know, the with your job reference doesn't necessarily mean it's a political opinion without more evidence supporting that. Despite the fact that they received numerous phone calls, numerous letters, this help us with your work is never explained anywhere. Does that mean that because he has a government job, he has lots of money, that he can help them financially? Does it mean that he in some way wants you to help us, I don't know, divert government funds to our organization, you know, come out favorably on some kind of board? There's no evidence in the record that they had any political motive for actually harming him. While the group itself, the Jaime Bateman Kayan group, is a political organization, that's largely irrelevant. The issue here is whether the petitioner's political opinion was their motivation for persecuting him. The fact that they want to achieve political goals, I mean, it can be done through financial means or other ways. The mere fact that... What do we do with the fact that I think the country reports talk about the various politicians that have been kidnapped by this group and held for years, and then they use them as bargaining chips, I guess, to try and get their arrested colleagues released from Colombian jails and so on. That's what makes this difficult for me. I mean, on the one hand, I can see it's just a plain old extortion attempt. And when, you know, gangs of men show up at your door as you're arriving at home late at night and demand a large sum of money, that sounds like extortion to me. But you do have the letter from the district attorney. You've got the country condition report that talks about the group. And this veiled reference to help us with our political goals. Where does that leave us? I'm not going to argue that the group is a good group. I mean, clearly they are a very bad... Well, it's a bad group with different reasons for doing what they're doing. Right. Petitioner says it's all political. You say they're just a band of criminals and thugs who are out to hold up, you know, rob from the rich and give to themselves. Right. Modern-day Robin Hoods. I don't know. I mean, the fact that they are a political group does not mean that they targeted him because of his political opinion. And that's where the case basically lies, is that the mere fact that he's a government worker is not enough in this case to demonstrate that the reason they sought him out, the reason they extorted money from him, is because of his political opinion. I mean, the only evidence of a political opinion is the fact that he works for the government. The cases that were cited in Petitioner's brief, Borjas and Gonzales-Neira, were both cases in which there was some kind of actual stand against the people trying to extortion them, where they were basically saying, you know, we will not pay you because of our political ideology, not the same as yours, and that led to an escalation in the harassment and extortion, what have you. In this case, there's no mention of any political ideology by either of the groups, aside from the mention that, you know, help us achieve our political goals. There's no stand committed by the family in this case saying, you know, we will not pay you because we don't believe in your policies. It's we don't have that money. There's never any, like, political motive that's clearly laid out by the persecutors or even by the Petitioners in this case. The few references to, you know, help us with your job are extremely vague. And despite the fact that they had, you know, so many phone calls, so many letters, that's not explained anywhere in the record. And the District Attorney's letter, while it mentions, you know, they're being persecuted politically, it's not explained in any way. There's no evidence, there's no assertions that they in any way attempted to have the Petitioner exert any kind of political influence or in any way use his political position and by proxy his political opinion to benefit their group. All we have in here is just an economic motive that happens to coincide with the fact, coincidentally perhaps, that he's a government employee and then therefore has a good job. And there's several references in the record where they say, you know, you have a good government job. So clearly they assume government workers have a good job, which means they make money. There's no point in the record where they come up and they say, we are doing this to you because you are a government employee. Obviously, if that was the case, it would be a different issue. But because of the fact, the only concrete demands they ever make on him are for the 800 million pesos and, you know, references to, you know, your family's well off, you have a really good job, so you're going to inherit some money. It appears from the record that it's just a purely economic motive based on them perceiving this person to be wealthy. Any further questions? If there are no further questions, based on the foregoing reasons, we respectfully request that the court decision be adjourned. In Neyra Gonzalez, the person was paying a guerrilla group, and when he learned who the group was, he ceased to pay them and imputed a political opinion to him. And for that reason, he was eligible for asylum. In this case, my client knew from the beginning that he didn't want to support this other group. And so he refused to support the group. How, though? I mean, the only express demand that they ever made of him was for cash, and he refused that because he didn't have that much money, we're told. And to achieve their political purposes. But they didn't ever explain what the political purpose or goal was. The only goal we know they had for sure was to try and extort money out of him. And to finish, in the end, we have this family who has been threatened by this violent leftist group, and they are fearful of return, and we think that we have the sufficient nexus and that the judge simply missed the call in this case. Thank you very much. Thank you. The case just argued is submitted for decision.
judges: Goodwin, Schroeder, Tallman